On behalf of Margaret Selby, an infant defendant, and a ward of John Selby, an answer was put in by her guardian, in which she denied that she claimed or had ever received any estate under the will and in any manner from her father. It was alleged that Henry Selby died greatly indebted, and that under executions against him or his administratrix all his slaves were sold, and purchased at a full price and fair sale by William Ross, who afterwards sold part of them to reimburse himself the cost, and conveyed the residue to John Selby, as the guardian and trustee of the children and legatees of the testator, under which John Selby held them for some time, and then divided them among the children, and allotted some to her. It was insisted that the sale was a fair one, and that Ross purchased with his own money, and with a view of befriending the children, and therefore made the conveyance, and that the property was not further liable to the creditors of the testator.
This defendant, since her answer was filed, had intermarried with Thomas Hanrahan, who was made a party and took the deposition of John Selby in support of the answer formerly put in by him for Margaret, his ward.
The answers of the other children were at first drawn in conformity with the statement contained in the answer of Margaret, but were altered before being sworn to, and admitted that the negroes allotted to them in the division were received by them as legatees.
It appeared fully upon other depositions and exhibits that William Lavender was the agent of the widow to manage the estate, and finding it pressed with executions and believing that unless sacrificed it would pay all the debts and something be left for the children, did, in order to prevent a sacrifice, borrow $5,000 and place the same in the hands of Ross to purchase such of the negroes as should not go for the full (409) value, under an agreement that Ross should hold the title as a security for the loan, and when that should be discharged by the hire and resale of a part of the slaves, and all the debts paid, that he should convey the slaves that might remain to the legatees. That Mr. Lavender reduced the debt to about $2,000, and then, by his request, Ross conveyed all the slaves to John Selby in trust to pay that balance and hold the residue for the children, between whom, after satisfying the debt by hire and sale, he divided twelve negroes in 1825, which he put in their possession respectively. When the conveyance was made to John Selby he had become the agent of the widow and received from Mr. Lavender all the accounts of the estate with full information of the return of the title, and also took from the widow an assignment of all her *Page 329 
interest for the benefit of the children. These circumstances were explicitly stated by Mr. Lavender, and as to the facts, were substantially admitted by Mr. Selby, who differed only in this, that he considered this conveyance to himself and the purchase by Mr. Ross as changing the character of the property so that it was no longer liable to the debts of the testator, but exclusively in trust for the children.
The only question made in this cause arises on the answer of Mr. Hanrahan; for all the other defendants, with becoming fairness, decline any defense founded on the idea that they do not hold as legatees. They admit they do.
As far as I can understand the truth of the case, the resistance of the other defendant must be unavailing. It is not necessary to inquire even whether an executor or the agent of an executor (for they stand in the same relation to the estate and are alike affected by the rule of the policy) can purchase at a sale under execution, where it clearly appears that he purchased at a sale under execution, where it clearly appears that he purchased with his own means, for a fair price, and was purchasing for himself. Upon that proposition I have, at least, a (410) strong inclination to the negative; for the same reasons apply to a sale by execution as to one by the executor. The ground is not in either case that he cannot get a title under the sale, as he had it before. That has been sometimes said, but it is rather a quaint illustration than a satisfactory argument. The true reason is the relation of the executor to the property. He knows its qualities, the situation of the estate, and the approaching necessity for a sale, and may be tempted to make advantages by allowing an execution sale. But even at such a sale it is the duty of an executor to aid in getting the best price as if the property were his own; and it is obvious that much may depend upon full representations of the value of the several articles and upon fair efforts to gain bids. But as a purchaser, his interest is the other way and directly in conflict with his duty and with the interest of the estate. Upon principle it seems to me, therefore, that such a sale cannot stand in this Court, except at the election of all interested. But in this case the purchaser disavows in express terms all interested motives on his part, and declares that he bought to prevent a sacrifice of the estate, and took a conveyance to Mr. Ross as a trustee only as a security for the advance. He states that there was no intention to defeat creditors; but the object was to pay all the debts and then convey the residue to the children. It does not appear that there are any debts but that to the plaintiff and, that seems not *Page 330 
to have been known then or when the deed was afterwards made to John Selby. According to that statement, a purpose of the purchase was the benefit of creditors, and the plaintiff could then claim under an express trust for himself. But if that were not so, and the intention was to promote the advantage of the children alone it would seem to me to enure to the benefit of the creditors. The children advanced nothing. The executor or the agent, which is the same thing, bought avowedly, it may be taken, for the children or a part of them, and afterwards held the (411) estate as a trust. It would be dangerous to say that he who is charged with protecting in equal degree the interest of all claiming the estate beneficially or having claims upon it should have the power of excluding some of the cestuis que trustent and conferring the benefit on a favored portion.
In this case, however, the estate paid for itself. The purchaser never was anything out of pocket, and claimed the negroes only as security, with a trust as to the surplus for those to whom the estate would go according to the will. The true construction of such a trust, unless the intent clearly and unequivocally appear, must be that it is not only for those to whom the will gives the property, but also as the will gives it, that is, subject to the claims of all persons against the legatees, as legatees. There was no intention in the administratrix or Mr. Lavender to defeat the claims of either creditors or the legatees, but, on the contrary, as he expresses it, to save the estate, which was no doubt mainly with a view to the children; but in doing that, the creditors are necessarily served incidentally. I therefore think the plaintiff is entitled to relief, and that it must be referred to the master to state the sum due to him, and to take an account of the estate of the testator in the hands of the defendants respectively, considering the slaves in question to be a part of the estate, which they are declared to be.
GASTON, J., concurred.